Alfred D. LOPEZ and Jeanie Reitzell, Plaintiffs-Appellants,

v.

DEAN WITTER REYNOLDS, INC., Defendant-Appellee.

No. 85–2429.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1986.

Decided Dec. 5, 1986.

M. Van Smith, Mountain View, Cal., for plaintiffs-appellants.

Jay R. Martin, Eric G. Wallis, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant-appellee.

Before NELSON, WIGGINS and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

Alfred D. Lopez ("Lopez") and Jeanie Reitzell ("Reitzell") appeal the district court dismissal of their claims for violations of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, (1982), and the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, (1982), against Dean Witter Reynolds Inc. ("Dean Witter"). They argue that the district court erred in dismissing these claims because the account in which Reitzell invested was one in which commodities futures contracts were purchased and sold, and therefore constituted both a commodity pool and a security. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   FACTS

This action arose as a result of losses sustained by Lopez and Reitzell in investments which they made through Dean Witter. The initial complaint in this action was filed on July 29, 1983, and was dismissed with leave to amend, by the district court in a published order on July 31, 1984. *See Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 584–89 (N.D.Cal.1984).

Thereafter, on November 26, 1984, appellants filed a second amended complaint,

claiming that churning [1] by Dean Witter of their investment accounts, constituted a violation of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. In addition, Lopez and Reitzell charged Dean Witter with violating Section 10(b) and Rule 10b–5 by entering into transactions unsuitable to their investment accounts, and they also raised several common law and constructive fraud claims and breach of contract claims.

Reitzell, individually, charged Dean Witter with violating the Commodity Exchange Act by inducing her to invest in its Commodity Guided Account Program ("CGAP") [2]. She also alleged that Dean Witter engaged in mishandling of her CGAP account in violation of the Securities Act of 1933. It is these claims which are the subject of this appeal. In addition, Reitzell brought a class action against Dean Witter, on behalf of all other persons investing in the CGAP account. [3]

Dean Witter filed a motion for summary judgment on Reitzell's claim for violation of the Commodity Exchange Act and her claim for violation of the Securities Act of 1933. The district court, on April 29, 1985, ordered these claims dismissed.

All remaining claims were submitted to arbitration, pursuant to a stipulation by the parties, which was approved by the district court and filed on July 25, 1985. Lopez and Reitzell appeal from the April 29, 1985 order granting Dean Witter's motion for summary judgment, and from that portion of the July 31, 1984 published order granting Dean Witter's motion to strike the prayer for trading losses in the churning claims [4]. *See Lopez,* 591 F.Supp. at 589–90. Their appeal was filed on August 16, 1985.

## II. DISCUSSION

The two issues presented for our review are:

(1) Whether the district court erred in dismissing appellant's claim alleging a violation of the Commodity Exchange Act, finding that the program in which appellant had invested was not a commodity pool subject to the provisions of the Act; and

(2) Whether the district court erred in dismissing appellant's claim alleging a violation of the Securities Act of 1933, finding that the program in which appellant had invested was not a security subject to the provisions of the Act.

---

1. Churning is defined to occur "when a broker, exercising control over the volume and frequency of trades, abuses his customer's. confidence for personal gain by initiating transactions that are excessive in view of the character of account and the customer's objectives as expressed to the broker." Black's Law Dictionary 220 (5th ed. 1979).

2. The CGAP in which Reitzell invested, which is the subject of this appeal, was a program in which eighty percent of a customer's deposit was placed in U.S. Treasury bills to accrue interest, with the remaining twenty percent placed in an account, along with funds from other participants in the CGAP. It was from these combined funds that commodities futures contracts were purchased and sold. However, each investor had separate accounts to which individual account numbers were assigned, and an individual's ability to engage in any purchases or trades of a particular commodity was dependent upon the minimum equity level in that individual's account. Thus, not all accounts traded the same contracts, and when a decision to trade or purchase was made, it was necessary for Dean

Witter to determine which accounts were eligible to buy or sell a particular commodity and how many contracts per account would be traded. Once traded, a transaction would be assigned to the appropriate, participating individual customer's account.

3. The class was never certified by the district court, as required by Fed.R.Civ.P. 23(c) and we therefore do not recognize such claims.

4. Although they appeal from this order, appellants have failed to raise any arguments addressing this issue in either their opening or reply briefs. We therefore deem this issue to have been waived. *See Int'l. Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985) (matters not specifically and distinctly raised and argued in appellant's opening brief will not ordinarily be considered on appeal); *Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1331–32 (9th Cir.1981) (same); *accord Libertyville Datsun Sales v. Nissan Motor Corp.,* 776 F.2d 735, 737 (7th Cir.1985) (issues not presented in plaintiff's initial brief are not properly before the court).

## A. Standard of Review

We review de novo a trial court's grant of summary judgment. *Howard P. Foley Co. v. Int'l. Brotherhood of Electrical Workers,* 789 F.2d 1421, 1422 (9th Cir. 1986). The task of our court is identical to that of the trial court, and all evidence and inferences must be viewed in the light most favorable to the non-moving party, to determine whether the district court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Water West, Inc. v. Entek Corp.,* 788 F.2d 627, 628–29 (9th Cir.1986).

## B. Jurisdiction

■ Prior to addressing the issues raised on appeal, it is first necessary to discuss briefly this court's jurisdiction to review this case. In order to be appealable and subject to review by this court, a district court decision must be a final one. *See* 28 U.S.C. § 1291.

Because we have previously held that an order compelling arbitration is dispositive of the case, and is a final order for purposes of review, *Howard Electrical & Mechanical Co. v. Frank Briscoe Co.,* 754 F.2d 847, 849 (9th Cir.1985), we hold that any order previously entered by the district court is also appealable. Therefore, under *Howard Electric,* the entry of summary judgment on the two claims which are the subject of the appeal herein are properly subject to review by this court. This is necessarily true because "an order which effectively sends a party out of court is appealable." *United States v. Lee,* 786 F.2d 951, 956 (9th Cir.1986) (citation omitted).

Since the order directing arbitration was filed on July 25, 1985, the notice of appeal filed in this action is timely. We therefore turn to the two issues presented for our determination.

## C. Applicability of the Commodity Exchange Act

■ Congress amended the Commodity Exchange Act and established the Commodity Futures Trading Commission in 1974 in an attempt to insure "fair practice and honest dealing on the commodity exchanges and provid[e] a measure of control over those forms of speculative activity which often demoralize the markets to the injury of producers, consumers, and the exchanges themselves." S.Rep. No. 1131, 93d Cong. 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad. News, 5843, 5844. These statutory amendments allowed reparation procedures to be initiated against commodity pool operators. *See Curran v. Merrill Lynch, Pierce, Fenner and Smith,* 622 F.2d 216, 231 (6th Cir.1980), *aff'd on other grounds,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).[5]

In order to determine whether the commodity accounts which Appellants held with Dean Witter were subject to the provisions of the statute, our first inquiry must be whether Dean Witter was running a commodity pool subject to the requirements of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* (1982). A commodity pool operator ("CPO"), defined at 7 U.S.C. § 2, is one who is engaged in a business "of the nature of investment trust, syndicate, or *similar* form of enterprise." (emphasis supplied). The Commodity Futures Trading Commission ("CFTC") regulations track the statute. However, no authority binding on us has spelled out the definition more precisely. Consequently, we are faced with an undecided question.

While numerous courts have dealt with the concept of commodity pools in the abstract, few have specifically attempted to define what constitutes a pool. The Commodity Exchange Act fails to provide any assistance in this regard.

Dean Witter argues that in order to constitute a commodity pool, there must be a

---

5. We note at this juncture, that the Supreme Court, in affirming the Sixth Circuit, found an implied private right of action under the Commodity Exchange Act. *See Merrill Lynch,*

*Pierce, Fenner and Smith v. Curran,* 456 U.S. 353, 395, 102 S.Ct. 1825, 1847, 72 L.Ed.2d 182 (1982).

pro rata sharing by the participants of profits and losses, and since here, there was no such sharing, there was no pool.

Appellants on the other hand, argue that at the crucial moment when a trade was executed, it was executed for the combined account, not for any individual customer. Thereafter, the contracts were allocated to individual accounts, and this allocation of contracts performed a function similar, although not identical, to a pro rata division of the profits and losses.

Those courts which have raised the issue require the following factors to be present in a commodity pool: (1) an investment organization in which the funds of various investors are solicited and combined into a single account for the purpose of investing in commodity futures contracts; (2) common funds used to execute transactions on behalf of the *entire* account; (3) participants share pro rata in accrued profits or losses from the commodity futures trading; and (4) the transactions are traded by a commodity pool operator in the name of the pool rather than in the name of any individual investor. *Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.,* Comm.Fut.L.Rep. (CCH) ¶ 21,627, p. 26,384 (N.D.Ill.1982); *Meredith v. ContiCommodity Services, Inc.,* Comm.Fut.L.Rep. (CCH) ¶ 21,107, p. 24,462 (D.D.C.1980) [Available on WESTLAW, DCTU database].

Applying the above requirements to Dean Witter's CGAP, we find that the program did not have the necessary characteristics to constitute a pool. There was a disparity in investment in the individual accounts, and because of the equity level required to engage in certain purchases and trades, not all accounts traded the same contracts. Therefore, not all accounts shared a pro rata profit or loss.

Although the CGAP possessed some of the requirements which have been deemed

necessary to constitute a commodity pool, reviewing "all the facts relevant to the entity's operation," the CGAP's characteristics are sufficient to distinguish it from a commodity pool. *See* 46 Fed.Reg. 26004, 26005–6 [1980–1982 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,188, p. 24,891 (May 8, 1981). Furthermore, while we recognize that the speculative commodities market requires strict regulation, we do not find the CGAP to be the type of account which Congress intended to constitute a commodity pool subject to the registration, reporting requirements of the Commodity Futures Exchange Act.

We hold, therefore, that because the CGAP was not a commodity pool, the district court was correct in its finding and grant of summary judgment on this claim.

### D.   Applicability of the Securities Act of 1933 [6]

■ Reitzell argues that the CGAP constitutes an investment contract and is therefore a security subject to the registration requirement of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e. *See Securities and Exchange Commission v. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). We disagree. The Ninth Circuit case of *Brodt v. Bache & Co.,* 595 F.2d 459 (9th Cir.1978), is dispositive on this issue.

The program in question in this appeal is a discretionary commodity account, whereby the broker is given "authority to buy and sell at the broker's discretion, without prior consultation with the customer." *Curran v. Merrill Lynch, Pierce, Fenner and Smith,* 622 F.2d 216, 221 (6th Cir. 1980), *aff'd on other grounds,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

We have previously held that a discretionary commodities trading account, such as the CGAP, is not an investment contract, subject to the registration require-

---

**6.**   The Commodity Futures Trading Commission has asked this court to find that Section 2(a)(1)(A) of the Commodity Exchange Act, 7 U.S.C. § 2 (1982) has preempted the applicability of the federal securities laws. However, because we find that the CGAP does not constitute

a commodity pool subject to the provisions of the Commodity Exchange Act, nor does it constitute an investment contract subject to the Securities Act of 1933, we decline to make such a finding of preemption.

ments of the Securities Act of 1933. *Brodt v. Bache & Co.*, 595 F.2d at 459. The principle behind an investment contract is that there is a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Securities and Exchange Commission v. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946).

A "common enterprise" is deemed to occur where "the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.'" *Brodt v. Bache & Co.*, 595 F.2d at 460 (citations omitted). In this circuit, the only requirement for there to be a common enterprise is that there is "vertical commonality: that the investor and the promoter be engaged in a common enterprise." *Mordaunt v. Incomco*, 686 F.2d 815, 817 (9th Cir.1982) (citing *Brodt v. Bache & Co.*, 595 F.2d at 460–461; *Hector v. Wiens*, 533 F.2d 429, 433 (9th Cir.1976)). However, this "common enterprise" which is required for an investment contract is absent in a discretionary commodities trading account. *Mordaunt v. Incomco*, 686 F.2d at 817. We have consistently held that discretionary commodities trading accounts are not common enterprises. *Meyer v. Thomas & McKinnon Auchincloss Kohlmeyer, Inc.*, 686 F.2d 818, 819 (9th Cir.1982).

Furthermore, the SEC has no policy of proceeding against commodities brokers as sellers of "securities." We follow its lead in declining to treat a commodities account as a security. *Hirk v. Agri-Research Council Inc.*, 561 F.2d 96 (7th Cir.1977); *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274 (7th Cir.), (per Stevens, J.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972).

The CGAP at issue here is a discretionary commodities trading account, which is not a common enterprise and does not constitute a security under the definition of the Securities Act of 1933. Therefore, the district court properly granted summary judgment in favor of Dean Witter and dismissed this claim.

### E. Attorneys' Fees

Dean Witter, in its brief, request attorneys' fees and double costs for responding to a frivolous appeal. We have discretion to award such fees under Fed.R. App.P. 38. However, in order to be considered frivolous, the result must be obvious or the arguments of error advanced wholly without merit. *Int'l. Union of Petroleum and Industrial Workers v. Western Industrial Maintenance Inc.*, 707 F.2d 425, 430 (9th Cir.1983). This is not such a case. Reitzell's arguments on appeal are "not wholly devoid of merit." *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 757 (9th Cir.1986). The issue raised with respect to the Commodity Exchange Act is new to this circuit. In addition, appellants have advanced meritorious arguments with respect to the Securities Act of 1933. Therefore, the request for attorneys' fees and double costs is denied.

### III. CONCLUSION

While we recognize a need for added investor protection, under current case law and the law of this circuit, the district court properly granted summary judgment in favor of Dean Witter. The judgment of the district court is AFFIRMED.