Donald WEST; Jerry Love, as individuals and on behalf of a class of persons similarly situated, Plaintiffs-Appellants,

v.

GREYHOUND CORPORATION; Armour Food Corporation; Armour and Company; Greynom, Inc.; Conagra, Inc.; Cag Susidiary, Inc.; Norbert Anderson; J.F. Grittner; Jack Forst, Defendants-Appellees.

No. 86–1888.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1987.

Decided March 25, 1987.

David A. Rosenfeld, San Francisco, Cal., for plaintiffs-appellants.

Jonathan H. Sakol, Thomas D. Wood, San Francisco, Cal., Roger J. Miller, Omaha, Neb., for defendants-appellees.

Before ANDERSON, ALARCON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Donald West and Jerry Love as individual employees and as class representatives of the employees (the Union Workers) of Armour Food Company (Armour)[1], appeal from the dismissal of their claims concerning welfare benefits, and the order granting summary judgment of the causes of action relating to pension benefits.

A judgment having been entered as to each claim and each party, this court has jurisdiction under 28 U.S.C. § 1291.

The novel question we must address is whether, upon the sale of a business, the seller and purchaser violated Employee Retirement Income Security Act of 1974 (ERISA), as amended, where the employees were terminated with proper notice after a majority voted against reductions in the unaccrued and unvested welfare and pen-

---

1. The plaintiffs filed this action against Greyhound Corporation, Armour and Company, and Armour Food Company. Prior to the sale of the 13 Armour plants to ConAgra, Greyhound Corporation wholly owned Armour and Company which in turn wholly owned Armour Food Company. The Master Agreement referred to in the text below was signed by Armour and Company.

sion benefits offered to them as a condition precedent to their being employed by the purchaser.

## I. PERTINENT FACTS

On August 31, 1979, Armour entered into a collective bargaining agreement (the Master Agreement) with United Food and Commercial Workers International Union (AFL–CIO). The Master Agreement, along with its amendments, provided for: (1) severance pay, (2) health and welfare benefits, (3) retiree health and welfare benefits, and (4) pension benefits. The Master Agreement was extended by amendment to August 31, 1985. Article XXV of the Master Agreement provided that Greyhound had the right to close its 13 plants and permanently separate the employees after giving six months notice.

On June 17, 1983, Greyhound announced that it would close its plants in six months, on December 17, 1983. On June 28, 1983, Greyhound entered into an agreement with ConAgra, Inc. and its wholly owned subsidiary CAG Subsidiary, Inc. (ConAgra) to transfer most of Armour's assets, including the 13 plants, to ConAgra.[2] In August 1983, ConAgra and the AFL–CIO agreed to modifications of the wages and unaccrued benefits contained in the Master Agreement. The Union Workers rejected the agreement. In November, 1983, a second contract was agreed to by ConAgra and the AFL–CIO. The Union Workers again rejected the proposed reductions to the employee benefits they had bargained for with Armour. On Friday, December 17, 1983, Greyhound closed the Armour plants and terminated the employees, including the Union Workers. Upon termination, Greyhound paid each employee all the severance benefits provided by the Master Agreement. The plants were reopened by ConAgra on Monday, December 19, 1983. Employees were hired under new terms and conditions.

## II. THE UNION WORKERS' THEORY OF THE CASE

The Union Workers contend that "ConAgra through a joint plan with [Armour] terminated the Armour Master Agreement employees and refused to hire them when the plants reopened in December 1983 because of the employees' assertion and claim to employee welfare benefit plans." The Union Workers argue that this conduct constituted discrimination against them for exercising their rights protected by ERISA in violation of 29 U.S.C. § 1140. They also assert that Armour violated its fiduciary duties as an employee benefit plan administrator, contrary to the requirements of 29 U.S.C. § 1104, by attempting to force them to accept ConAgra's demand. We disagree and affirm.

## III. DISCUSSION

### A. *Standard of Review*

■ An order of dismissal for failure to state a claim upon which relief can be granted is reviewable *de novo*. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984). The district court should not dismiss a complaint "unless it appears beyond a reasonable doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir.1986).

■ We also review an order granting summary judgment *de novo*. *Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880, 883 (9th Cir.1986). Viewing the evidence and inferences arising therefrom in the light most favorable to the non-moving party, we must determine whether the district court properly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Id.*

---

**2.** After the sale, ConAgra used the name Armour Food Company for the subsidiary which operat-ed the acquired business assets.

The Union Workers filed for summary judgment in this matter on the discrimination claim. They do not argue before this court that there are genuine issues of material fact in dispute. Thus, our task is to determine whether the district court erred as a matter of law in dismissing certain counts and in granting summary judgment as to the remaining causes of action.

## B. *Discrimination Claim*

The Union Workers argue that the termination of their employment by Greyhound and the refusal of ConAgra to hire them when the Armour plants reopened resulted from their refusal to vote for a collective bargaining agreement that would reduce unaccrued welfare and pension benefits contained in the Master Agreement. The Union Workers assert that section 1140 protects them from retaliation for asserting their rights to the employee benefits contained in the Master Agreement.

Section 1140 provides in relevant part:
It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

To qualify for relief under section 1140, the participant or beneficiary must show that he was exercising a "right to which he is entitled" or to which he "may become entitled." The Union Workers have failed to show any act of discrimination for asserting a right to which they were entitled or may become entitled under ERISA.

The modifications suggested by ConAgra did not affect any accrued or vested rights owed to them by Armour. The Union Workers conceded that "[a]ll severance obligations were met by Greyhound at closing."

■ ■ One of the major purposes of ERISA is to ensure that employees receive their vested benefits when the pension plans are terminated. *Nachman Corp. v.*

*Pension Benefit Guar. Corp.*, 446 U.S. 359, 374, 100 S.Ct. 1723, 1732, 64 L.Ed.2d 354 (1980). To assure the protection of vested pension benefits, ERISA prescribes vesting and accrual schedules and provides that an employee's right to his normal retirement benefit is "nonforfeitable." 29 U.S.C. § 1053(a). ERISA, however, expressly exempts employee welfare benefit plans from the sections concerned with vesting and accrual. 29 U.S.C. § 1051(1). While ERISA, in 29 U.S.C. § 1322, also guarantees the payment of "all nonforfeitable benefits," this protection is applicable only to pension, stock bonus or profit-sharing plans. 29 U.S.C. § 1321(a); 26 U.S.C. § 401(a). There is no language in ERISA which provides for the accrual of welfare benefits or guarantee that such benefits are vested or nonforfeitable. *Turner v. Local No. 302, Int'l Bhd. of Teamsters*, 604 F.2d 1219, 1225 n. 5 (9th Cir.1979).

In *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), the defendant, National Steel Corporation, sold its Weirton Steel Division to the Division employees. National Steel Corporation would not pay the severance pay or early retirement benefits for the former employees under the terms of the sales contract, but the new company agreed to establish those benefit plans under the new employment contract. The union employees approved the changes in the bargaining agreement and the other terms of sale. National Steel Corporation unilaterally changed its policies for non-union employees. All former employees were rehired by the new employer. The nonunion employees challenged that portion of the agreement which eliminated the defendant's obligation to pay early retirement or severance benefits. The nonunion employees alleged that the employer breached its fiduciary duty when it negotiated these terms into the contract.

In *Sutton*, the Fourth Circuit affirmed the denial of these claims and stated that "[u]nder ERISA's vesting rule, only accrued benefits must be nonforfeitable." With respect to the issues raised by these appeals, ERISA defines an accrued benefit

as an "annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). The court in *Sutton* concluded that the defendant employer could "exercis[e] the right accorded other employers to renegotiate or amend, as the case may be, unfunded contingent benefits payable before normal retirement age. The changes, accomplished in this manner, are not to be reviewed by fiduciary standards." *Id.* at 411.

■ In the matter before us, ConAgra owed no fiduciary duty under ERISA to the Union Workers. We held in *Bellingham Frozen Foods, Inc. v. NLRB*, 626 F.2d 674, 678 (9th Cir.1980) that "a purchaser of assets is under no obligation to hire employees of a predecessor and is free to set the initial terms of employment for these employees should it decide to hire them. Employees are also free to accept or reject the terms offered." Thus, since ConAgra was free not to hire Union Workers and to control the terms of their employment, they had no nonforfeitable and enforceable right under section 1140 against the purchaser of Armour's assets.

The Union Workers conceded before the trial court that "up to the date of termination all plaintiffs were paid their benefits." Therefore, Armour did not deprive them of any right protected under section 1140.

The Union Workers assert, however, that they are entitled to recover under section 1140 because they lost their employment due to the assertion of their right to future employee benefits. As an employee has no ERISA right to future, unaccrued benefits, he cannot claim discrimination because a purchaser of business assets will not hire him for insisting on unacceptable terms. If we were to hold otherwise, we would emasculate our holding in *Bellingham* that a new employer may set the terms of employment. *Bellingham*, 626 F.2d at 678.

Armour had the right to close its plants under the collective bargaining agreement and to terminate the employment of the Union Workers upon six-months notice. Armour fully complied with the notice requirement. Upon such termination it owed its former employees no further duty except for the payment of accrued benefits. ConAgra had no duty under ERISA to hire any of the Union Workers or to offer them welfare benefits that were acceptable. Nevertheless, the Union Workers now insist that the unsuccessful efforts of Armour and ConAgra to work out mutually acceptable terms of employment, including employee benefits, created enforceable rights. We agree with the trial court's observation that "the negotiations were not to induce plaintiffs to give up rights to benefit levels set by the master agreement; they were to induce the defendants to give up their rights to terminate (or not hire) plaintiffs."

In summary, we hold that no violation of section 1140 of ERISA is shown where the seller of a business terminates employment under the provisions of a collective bargaining agreement and the purchaser refuses to hire any of the employees because they refuse to accept a reduction of unaccrued employee benefits.

### C. Lack Of Notice Of The Termination Of The Collective Bargaining Agreement

■ The Union Workers also contend that the notice of termination of employment did not terminate the rights to unaccrued benefits under the Master Agreement. The Master Agreement as amended was due to expire on August 31, 1985. No authority has been cited for the novel proposition that the right to unaccrued benefits survives a valid termination of employment after the business is sold. If this argument were meritorious, an employer would be required to continue to pay unearned benefits to his workers after he had gone out of business. We find nothing in ERISA that would support this theory or that would give an employee the right to unaccrued employee benefits after his job was lawfully terminated in accordance with a collective bargaining agreement.

### D. Breach Of Fiduciary Duty

■ The Union Workers assert that Armour violated its fiduciary duties as an employee benefit plan administrator by

threatening them with termination if they did not accept ConAgra's demand for a reduction in unaccrued benefits. We disagree.

This claim is fully answered by the Fourth Circuit's decision in *Sutton v. Weirton.* The court in *Sutton* stated:

> Congress authorized an employer to administer its pension plan, and in the discharge of its duties with respect to the plan, the employer must satisfy the exacting fiduciary standards imposed by ERISA. Congress, however, has not prohibited an employer who is also a fiduciary from exercising the right accorded other employers to renegotiate or amend, as the case may be, unfunded contingent benefits payable before normal retirement age. The changes, accomplished in this manner, are not to be reviewed by fiduciary standards.

*Sutton,* 724 F.2d at 410-11.

In *White v. Distributors Ass'n Warehousemen's Pension Trust,* 751 F.2d 1068 (9th Cir.1985), we observed:

> It is true, of course, that both ERISA and the Taft-Hartley Act require "fiduciaries" to act reasonably in fashioning and applying pension eligibility rules. It is also true that, at least for some purposes, the defendants, as well as the plaintiff's union local, are subject to these fiduciary obligations. *The defendants' behavior during collective bargaining sessions, however, is subject to different constraints.* Ordinarily, the distinction between an employer's (or union's) role as fiduciary and its role as a negotiator of a collective bargaining agreement is unimportant. That is so when an employer and union agree by collective bargaining to grant to pension fund trustees the power to establish pension eligibility rules. The trustees' duty to act reasonably in establishing such rules exists even though such a duty did not exist with respect to bargaining as such. In this case, however, the rules affecting the plaintiff's pension benefits were fixed by the collective bargaining process. Under these circumstances the rule in question is insulated from judicial

review under ERISA or the Taft-Hartley Act. *This result is in accord with a basic principle of labor law, viz., that the parties to collective bargaining agreements generally are free to fashion whatever type of employment contract on which they are able to come to agreement.*

*Id.* at 1071 (footnote omitted) (emphasis added).

The record does not show that Armour breached its duty as a plan administrator. As noted above, the Union Workers concede that they received all benefits accrued prior to their termination. Armour's efforts to renegotiate future unaccrued benefits were appropriate in its separate role as employer.

### E. *Attorney's Fees On Appeal*

Under ERISA, this court has discretion to award attorney's fees to either party in an action brought by a participant or beneficiary prevailing in an appeal. *Carpenters Southern California Admin. Corp. v. Russell,* 726 F.2d 1410, 1416-17 (9th Cir.1984). The factors to be considered in awarding attorney's fees are as follows: (1) the culpability or good faith of the opposing party; (2) the ability of opposing party to pay the award fees; (3) the degree of deterence which would result from an award of fees; (4) whether a number of participants under an ERISA plan would benefit from an award of fees; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). In *Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1506 (9th Cir.1984), we stated that these "factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." We cannot say that the Union Workers have acted in bad faith or that their contention were completely without merit. Accordingly, we reject ConAgra's request for attorney's fees.

### F. *Denial Of Further Discovery*

The Union Workers also claim that the district court abused its discretion in limiting discovery in this matter. They state,

however, that if this court affirms the district court's interpretation of section 1140 to limit actions brought thereunder to accrued rights, additional discovery "would not have been relevant." Because we have concluded that the district court was correct as a matter of law, we do not reach this final claim of error.

The district court correctly applied the law to the issues raised by the Union Workers. Therefore, the orders (1) dismissing the claims regarding unaccrued welfare benefits, (2) denying the Union Workers' motion for summary judgment, and (3) granting Armour's and ConAgra's motion for a summary judgment concerning the causes of action relating to the accrued benefits are AFFIRMED.