## COMMODITY FUTURES TRADING COMMISSION

v.

## Williams D. PERKINS; Tax Accounting Office, Inc., Appellants.

### No. 09–2507.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 30, 2010.

Opinion Filed: July 1, 2010.

Lynn A. Bulan, Esq., Martin B. White, Esq., Commodity Futures Trading Commission, Washington, DC, Elizabeth M. Streit, Esq., Commodity Futures Trading Commission, Chicago, IL, for Commodity Futures Trading Commission.

Robert W. Shimer, Esq., Camp Hill, PA, for Appellants.

Before: SLOVITER, BARRY and HARDIMAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

This is the second of two actions brought by the Commodity Futures Trading Commission ("CFTC") in response to a multi-million dollar investment fraud scheme involving commodity futures trading. In the first case, we affirmed the judgment entered against the manager of an investment vehicle called Shasta Capital Associates ("Shasta"), holding that Shasta's manager, Equity Financial Group LLC ("Equity Group"), was a "commodity pool operator" ("CPO") for purposes of the Commodity Exchange Act, 7 U.S.C. § 1, et seq. ("CEA"), even though Shasta did not actually execute any futures trades and instead forwarded money to another fund—Tech Traders [1]—which executed trades. *Commodity Futures Trading Comm'n v. Equity Fin. Group LLC*, 572 F.3d 150 (3d Cir.2009) *("Equity")*, cert. denied, *Shimer v. Commodity Futures Trading Comm'n*, —— U.S. ——, 130 S.Ct. 1737, 176 L.Ed.2d 212 (2010). We consider here whether appellant William Perkins ("Perkins"), the manager of another investment vehicle, Universe Capital Appreciation, LLC ("Universe"), which also did not execute futures trades, and instead forwarded investment funds to Shasta (which in turn forwarded the funds to Tech Traders), was a CPO.

The issue before us is essentially identical to the one we considered in *Equity*, and we respectfully decline Perkins's emphatic invitation to revisit our recently-established precedent. The District Court determined that Perkins acted as a CPO. We agree, and will affirm.

---

1. We will use the name Tech Traders to refer to four entities that operated in concert: Traders, Inc., Tech Traders, Ltd., Magnum Investments, Ltd., and Magnum Capital Investments, Ltd. The distinctions between these companies are irrelevant to this appeal.

The District Court had jurisdiction under 7 U.S.C. § 13a–1. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same test the District Court used. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir.2010). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)).

Perkins argues that he was not acting as a CPO because Universe did not participate in "the actual trading itself ... in the name of the pool entity from a commodity futures trading account that has been opened at a futures commission merchant ... in the name of the pool." (Perkins Br. at 18.) That argument is unavailing in light of our opinion in *Equity,* in which we explained that

> the statute does not require a commodity pool operator to execute commodity futures transactions. The language of the definition lacks an explicit trading requirement, and the remedial purposes of the statute would be thwarted if the operator of a fund could avoid the regulatory scheme simply by investing in another pool rather than trading. If an entity is engaged in a business in the nature of an investment trust, syndicate, or similar form of enterprise, and it solicits, accepts, or receives funds for the purpose of trading, it is a commodity pool operator. The actual trading of commodity futures is not required.

572 F.3d at 158.

Perkins offers numerous reasons why he believes we should revisit *Equity* and follow *Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880 (9th Cir.1986), which he insists imposes a trading requirement. In *Equity,* we quoted *Lopez's* four-part test (for determining whether an entity is a commodity pool) and wrote that "[t]he *Lopez* court confronted ... a different legal question" and "did not address whether a commodity pool operator must itself execute commodity futures transactions." 572 F.3d at 158. Thus, we have already considered the specific arguments Perkins raises, and rejected them.

Perkins nevertheless suggests that we might benefit from "a competent analysis of the legislative history of the CEA and the expectation of Congress about the direct involvement in commodity futures trading activity by CPO's [sic]." (Perkins Br. at 17–18 n. 3.) We think our legislative history analysis in *Equity* was more than satisfactory. There, we determined that "[t]he absence of a trading requirement is consistent with the purposes of the" CEA, explaining that "when Congress defined commodity pool operator, it sought to regulate the solicitation of funds from customers and potential customers. And it intended to protect them from harmful conduct, especially fraudulent solicitation. The statute would be undermined if one entity could escape regulation merely by having another execute its trades." *Equity,* 572 F.3d at 157.

Perkins posits that the District Court's analysis of *Lopez* is "a stunning example of why appellate review is ... necessary," (Perkins Br. at 18–19), arguing that Universe could not have been a commodity pool because the Universe funds did not remain "combined" in "a single account," but were instead "periodically transferred from time to time over a period of more than two years to ... Shasta which, in turn, periodically wired the funds ... to ... Tech [Traders]." (*Id.* at 21 (emphasis omitted).) This argument is without merit. Similar fund transfers took place in

*Equity,* and we made clear that such transfers do not offend the definition of "commodity pool." Allowing an investment manager to circumvent regulation merely by transferring funds from one account to another does not comport with Congress's aim of protecting investors.

In his reply brief, Perkins cites thirty-eight provisions of the CFTC regulations and argues that our holding in *Equity* is "in direct conflict with all thirty-eight!" [2] (Reply Br. at 11.) The cited provisions unsurprisingly require CPOs to provide commodity pool participants with extensive information about the commodity futures trades involving their money. Perkins reads those provisions as signaling that the CFTC itself interprets the terms "commodity pool" and "CPO" more narrowly than we did in *Equity.* However, as we pointed out in *Equity,* other CFTC regulations suggest just the opposite. 572 F.3d at 157 n. 13. The conflicting language of those regulations does not change our conclusion that Congress intended broad definitions of "commodity pool" and "CPO."

Perkins also contends that Universe is distinguishable from Equity Group in that Universe was further from the actual trading (twice removed, instead of just once), and so did not have the character of a commodity pool. Our holding in *Equity* makes clear that the proximity to trading is not an important factor. If the pool is established with the purpose of trading in commodity futures, then the pool is a commodity pool for CEA purposes. *See Equity,* 572 F.3d at 158.

We reject the other arguments made by Perkins and the Tax Accounting Office,

Inc., without further discussion. We will affirm the judgment of the District Court.

---

2. For example, Perkins quotes regulations requiring that CPOs provide pool participants with certain information which only the trader is likely to know, like the "commodity interest positions liquidated," "unrealized gain or loss in which the pool engaged," and the "total amount of all brokerage commissions during the reporting period." (Perkins Reply Br. at 4 (emphasis omitted).)