Robert T. BRODT and Nancy J. Brodt, his wife, Plaintiffs-Appellants,

v.

BACHE & CO., INC., a Delaware Corporation, Commonwealth Commodities Corp., an Arizona Corporation, John Bergman and Jane Doe Bergman, his wife, Robert Plenge and Jane Doe Plenge, his wife, Randy Thomas and Jane Doe Thomas, his wife, Defendants-Appellees.

No. 76–1763.

United States Court of Appeals, Ninth Circuit.

Nov. 13, 1978.

Rehearing Denied May 10, 1979.

Jack E. Evans (argued), Phoenix, Ariz., for plaintiffs-appellants.

Arthur P. Greenfield (argued), Snell & Wilmer, Phoenix, Ariz., for defendants-appellees.

Before CHOY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

KELLEHER, District Judge.

This case presents a question of whether a discretionary commodities trading account is an investment contract and therefore a security within the meaning of and subject to the registration requirements of the Securities Act of 1933, 15 U.S.C. § 77a, et seq. The District Court held that such an account was not an investment contract. We affirm.

During 1974 appellee Bergman, a registered representative of appellee Bache & Co., a national brokerage house, solicited appellants to open a commodities trading account. Although appellants knew little about the commodities market, they were persuaded by Bergman to sell their entire stock portfolio and invest the proceeds in a discretionary commodities account with Bache. Appellants sold the stock at a loss and followed Bergman's instructions to execute a form prepared by Bache to deposit the stock sale proceeds in an account with a local savings and loan association. Regis-

---

* Honorable Robert J. Kelleher, United States District Judge, sitting by designation.

tered representatives of Bache were authorized to withdraw funds at their discretion from the account to finance commodities transactions, but were not required to notify the investor prior to the transactions. Notwithstanding Bergman's representations that appellants would reap sizable profits from the investments in commodities futures, appellants discovered after Bergman left Bache's employ that all of their money had been lost, and that Commonwealth Commodities Corporation, the company through which Bache had purchased the commodity option contracts, was insolvent.

On April 28, 1975, appellants filed a four-count complaint in the United States District Court for the District of Arizona, alleging violations of several provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Commodity Exchange Act, negligence, breach of warranty, and misrepresentation. Of particular import to the instant appeal is count two, wherein appellants alleged a violation of the registration requirements of the 1933 Act, 15 U.S.C. § 77e(a)(1) and (c).

On December 9, 1975, appellants filed a motion for partial summary judgment as to count two. Appellees opposed this motion and also affirmatively moved to dismiss count two. The District Court denied Brodt's motion for partial summary judgment and granted Bache's motion to dismiss count two. An amended order filed February 19, 1976, clarified the District Court's holding that "a discretionary commodities account is not a security within the meaning of the Securities Act of 1933." Concluding that the order of dismissal "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), the District Court certified the question for an interlocutory appeal. On March 26, 1976, we agreed to hear this interlocutory appeal.

The term "security" is defined in Section 2(1) of the 1933 Securities Act, 15 U.S.C. § 77b(1), to mean, *inter alia,* any investment contract. The now-classic definition of an investment contract was formulated by the Supreme Court in *SEC v. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946): "an investment of money in a common enterprise with profits to come solely from the efforts of others." The Supreme Court has recently restated that "the touchstone [of an investment contract] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

The first and third elements of the investment contract test are met in the instant case. Brodt clearly made an investment of money. Accepting appellants' allegation that the account was totally discretionary, in that Bache could and did make trades without receiving the appellants' specific permission, the element of receiving return solely from the efforts of others is also satisfied. The crucial factor in the instant case is whether a common enterprise exists.

This Court has defined "common enterprise" as one in which the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir. 1973) (citations deleted). This definition is inconsistent with the strict pooling requirement imposed by the Seventh Circuit. In *Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96 (7th Cir. 1977) that circuit explicitly interpreted their prior decision in *Milnarik v. M-S Commodities, Inc.,* 457 F.2d 274 (7th Cir. 1972) as requiring a pooling of investments in order to have a common enterprise. Both these cases then rejected the argument that a discretionary commodities account is a security. This pooling of interests, usually combined with a pro-rata sharing of profits, has been characterized as *horizontal* commonality.

■ Our definition rejects any requirement of horizontal commonality in favor of requiring only *vertical* commonality. *Hector v. Wiens,* 533 F.2d 429 (9th Cir. 1976). The concept of vertical commonality requires that the investor and the promoter be involved in some common venture without mandating that other investors also be involved in that venture. *Id.* at 433. In *Hector* this court found that a factual question existed as to whether a farmer, a feedlot operator and a bank were involved in a common enterprise. The court indicated that if *both* the farmer and the bank were dependent upon the success of the feedlot operation for the success of their investments, a common enterprise would exist.

The Fifth Circuit also seems to have adopted the concept of vertical commonality. In *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 478 (5th Cir. 1974) the court held that the critical factor in the common enterprise test "is not the similitude or coincidence of investor input, but rather the uniformity of impact of the promoter's efforts." The Fifth Circuit followed *Koscot* with a case holding that a discretionary commodities trading account is an investment contract. *SEC v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974). There the court interpreted the *Koscot* treatment of common enterprise as rejecting "the proposition that the pro-rata sharing of profits is critical to a finding of commonality . . . and cast[ing] aspersions on the elevation of a pooling ingredient to exalted status in inquiries concerning a common enterprise." *Id.* at 522. The Fifth Circuit again rephrased the "critical inquiry" as "whether the fortuity of the investments collectively is essentially dependent upon promoter expertise." *Id.* The court then found this test satisfied in the case of a discretionary commodities trading account because "the success of the trading enterprise as a whole and customer investments individually is contingent upon the sagacious investment counseling of Continental Commodities." *Id.; accord, Jones v. International Inventors Inc. East,* 429 F.Supp. 119 (N.D.Ga.1976) (invention development scheme involved a common enterprise even though each investor was concerned only with development of his separate invention and each investor's return was independent of that of similar investors).

A recent case in this circuit suggests that we may be applying the vertical commonality test nearly as expansively as the Fifth Circuit. In *United States v. Carman,* 577 F.2d 556 (9th Cir. 1978), we found that the sale of Federally Insured Student Loan packages by a trade school to a credit union involved a common enterprise. Although the loans were guaranteed by the federal government, with a fixed return, the court found that there was a risk of loss, because the package included a repurchase clause and a guarantee that the school would cover any refund liability accruing from students who had not completed their school programs. Thus, a substantial risk of loss for the investor on the school's failure was sufficient to create a common enterprise, even though there was otherwise no common enterprise between the school and the credit union.

■ Similarly, in the instant case, the investor's return, while specifically determined by the commodities market, is also clearly affected by the expertise of the person doing the trading. *Carman* can be distinguished from the case at bar because the success or failure of Bache as a brokerage house does not correlate with individual investor profit or loss. On the contrary, Bache could reap large commissions for itself and be characterized as successful, while the individual accounts could be wiped out. Here, strong efforts by Bache will not guarantee a return nor will Bache's success necessarily mean a corresponding success for Brodt. Weak efforts or failure by Bache will deprive Brodt of potential gains but will not necessarily mean that he will suffer serious losses. Thus, since there is no direct correlation on either the success or failure side, we hold that there is no common enterprise between Bache and Brodt.

*Los Angeles Trust Deed & Mortgage Exchange v. SEC,* 285 F.2d 162 (9th Cir. 1960), from which the *Glenn Turner* court derived its definition of common enterprise, can also be distinguished from the instant situation. That case involved the sale of second deeds of trust. The promoter, however, performed a variety of additional services for the investor, including locating the discounted trust deeds, evaluating them and servicing the deeds. In addition, a "guaranteed" return on these investments was promised. If the promoter failed, the court seemed convinced that the investor would suffer serious loss. *Id.* at 172. Thus, there was the same correlation between promoter failure and investor loss that created a common enterprise in *Carman.* As noted above, that same correlation does not exist here.

Our case comes to this. Using the classic definition of *Howey,* there existed an "investment" by the appellant, the profits from which were "to come solely from the efforts of others." The investment, however, was not in a "common enterprise." It was in commodity futures. Appellant's enterprise was a "solitary" one. His profits were shared neither with other investors nor the appellee; whether his investment flourished or perished was unrelated directly to either the general financial health of the appellee or the ability of the appellee to perform a duty, the purpose of which would be "to secure" to some extent the appellant's investment. Merely furnishing investment counsel to another for a commission, even when done by way of a discretionary commodities account, does not amount to a "common enterprise."

Affirmed.