**Christopher STENGER, Plaintiff-Appellant,**

v.

**R.H. LOVE GALLERIES, INC., and R.H. Love, Defendants-Appellees.**

No. 83–3028.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1984.

Decided Aug. 13, 1984.

Martin S. Ackerman, New York City, for plaintiff-appellant.

Frederick V. Lochbihler, Chapman & Cutler, Chicago, Ill., for defendants-appellees.

* Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, sitting by designa-

Before PELL and FLAUM, Circuit Judges, and KELLAM, Senior District Judge.*

PELL, Circuit Judge.

In a case that we might term one of first Impressionism, we must decide whether the sale of paintings allegedly of that genre is also the sale of a security. The district court found that plaintiff's somewhat ingenious 144-count complaint against defendants, an art gallery and its president, failed to allege the existence of a securities transaction or a violation of federal warranty law, and dismissed the remaining pendent state claims for lack of jurisdiction. Plaintiff appeals only the determination that his complaint does not adequately set forth the elements of the sale of a security.

I  Facts

The resolution of this appeal has been hampered by repeated factual misstatements made in plaintiff's briefs. According to plaintiff's complaint this case involves plaintiff's purchase of 12 paintings from defendant Galleries. Plaintiff's complaint sets forth the following allegations, which we must accept as true: Plaintiff approached defendant Love with the intent of investing money in a safe, liquid commodity. Defendant Love stated that investing in art through defendant Galleries would produce a safe profit. Love promised to create a market for plaintiff's paintings and would, if plaintiff wished, resell the paintings. Induced by the lure of safe profits, plaintiff purchased 12 paintings for approximately one-and-one-half million dollars. The paintings were accompanied by an Authentication and Appraisal, a Guaranteed Repurchase Allowance, and an Inventory and Record.

The Authentication and Appraisal is, as the name suggests, a document guaranteeing the authenticity of the painting and appraising its value. The Inventory and Record contained a description of the paint-

tion.

ing and a provenance, which is a brief history of the work. The Guaranteed Repurchase Allowance allows a buyer to return a painting within five years and have the full amount of the purchase price credited toward the purchase price of one or two works of art having equal or greater value. It is these three documents, which are attached to the complaint, that plaintiff alleges transform an otherwise ordinary retail sale of paintings into a sale of securities.

As we shall see, plaintiff's complaint is insufficient to allege that the paintings and accompanying documents are securities. Plaintiff's briefs before this court, however, introduce new elements into the picture. In his briefs, plaintiff presents the issue as whether the sale of a painting along with "the right to trade the painting back into the defendant Galleries' Naive American Impressionism fund for a fund painting which had greater profit potential, and a share of the fund's profits when plaintiff, along with other investors, invested for profit in the defendant Galleries' Naive American Impressionism school of art fund," constitutes the sale of a security. The existence of a fund, shared profits, and other investors certainly creates a more compelling portrait of a security. None of these appear anywhere in plaintiff's complaint, however, and plaintiff's counsel claimed at oral argument that these were necessary "legal fictions." Necessary or not, fictions are not made more palatable by being termed "legal" and they have no place in either complaints or briefs. We will dispense with plaintiff's briefs and instead rely upon the complaint for the facts.

II  Sale of a Security

The term "security" includes any "investment contract." 15 U.S.C. §§ 77b, 78c. The Supreme Court formulated the now classic definition of "investment contract" in *S.E.C. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Howey* investors bought sections of a large citrus grove run by defendant and entered into service contracts under which defendant cultivated, harvested, and sold the fruit. The investors nominally owned the land, but could not enter the land and had no right to specific fruit. Defendant pooled the harvested fruit and allocated the profits among the investors. The Court found that the scheme involved an investment contract. The Court held that:

> [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

328 U.S. at 299, 66 S.Ct. at 1103; *see also Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) (*Howey* applies to both Securities Act of 1933 and Securities Exchange Act of 1934).

Under *Howey*, then, an investment contract consists of (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits produced solely by the efforts of others. Plaintiff's complaint adequately alleges (1) and (3), the only remaining question is the adequacy of plaintiff's allegation concerning the existence of a common enterprise.

This Circuit has strictly adhered to a "horizontal" test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits. *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir.1972); *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274 (7th Cir.1972), *cert. denied*, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144. In contrast, the Ninth and Fifth Circuits accept either horizontal or "vertical" commonality, in which the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment." *S.E.C. v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 n. 7 (9th Cir.1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53; *see also Brodt v. Bache & Co.*,

595 F.2d 459 (9th Cir.1978); *S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir.1974). Plaintiff claims that horizontal commonality is present here, and failing that, that we should adopt the more liberal vertical commonality test.

■ Plaintiff's first contention is clearly without merit. Plaintiff's tardy creation of "legal fictions" aside, there is nothing in his complaint setting forth a pooling of funds or sharing of profits with other investors. Plaintiff does not even allege that other investors existed. Even if we assume that defendants sold paintings to other investors, there is no basis for assuming that the appreciation or depreciation of plaintiff's collection would benefit anyone other than himself. This case, then, is radically different from the sale of citrus groves in *Howey* and the sale of beavers in *Kemmerer v. Weaver*, 445 F.2d 76 (7th Cir.1971), and *Continental Marketing Corp. v. S.E.C.*, 387 F.2d 466 (10th Cir. 1967), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968), not because of the difference in goods being sold, but because those cases involved the nominal sale of property as a means of pooling money to be used in a common cultivation and marketing effort.

We need not consider plaintiff's suggestion that this Circuit adopt the vertical commonality test as no such vertical commonality is present here. Vertical commonality requires that the fortunes of the investor and the promoter be interwoven. An example of this type of relationship is a pyramid scheme, such as those found in *S.E.C. v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir.1973), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53, and *S.E.C. v. Koscot Interplanetary Inc.*, 497 F.2d 473 (5th Cir.1974). In *Glenn W. Turner Enterprises, Inc.*, defendant offered business motivation courses, known as "Plans" or "Adventures." The only motivation provided by the courses was to sell the courses to other investors in return for a commission. In *Koscot Interplanetary, Inc.*, the scheme involved inducing investors to buy the right to sell cosmetic distributorships, and then inducing those who bought distributorships into selling distributorships to new investors for a commission. In both cases the investors and defendants shared the profits made when new investors were induced to become the new base for the pyramid. In this situation the investors' fortunes are clearly interwoven with those of the promoters, and accordingly there is vertical commonality.

■ In the case before us the fortunes of plaintiff and defendants are unrelated. Plaintiff's paintings may appreciate and he is free to sell them through any means he wishes; defendant would not share in any profit. Conversely, defendants would receive a sales commission if plaintiff sells his paintings through defendant Galleries, even if he sells them at a loss. The Guaranteed Repurchase Agreement does not alter this relationship. Plaintiff merely gets credit for the purchase price of a painting that he trades in on a new work. Plaintiff does not share in any profit made on appreciation of the new painting before he buys it, and defendant does not share in any appreciation in value after plaintiff buys the new painting. This relationship is no different than that found in a typical commodities brokerage account, in which the broker profits from commissions while the investor profits from appreciation. In *Brodt v. Bache & Co.*, 595 F.2d 459 (9th Cir.1978), the court rejected the claim that such an account involves vertical commonality, noting that whether the investor's investment flourished or perished was unrelated to whether the broker flourished or perished.

Plaintiff has failed to allege an investment in a common enterprise under either the horizontal or vertical commonality test. The sale of the paintings and accompanying documents did not constitute an investment contract. Plaintiff's plea that we establish a regulatory framework for the sale of art cannot be answered through the securities laws. Accordingly, the decision of the district court is AFFIRMED.