No. 83–2025. MORDAUNT ET AL. v. INCOMCO ET AL. C. A. 9th Cir. Certiorari denied. ▇▇▇▇▇▇▇

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE BRENNAN join, dissenting.

Responding to a magazine advertisement, petitioners entered into discretionary commodities futures contracts with respondents. Petitioners gave respondents over $45,000 to invest in the commodities futures market. Investment decisions were left entirely to respondents, who received a commission for each transaction they conducted. The accounts were soon worth far less than $45,000, and petitioners canceled the agreements. They then brought the present action in Federal District Court, alleging violations of federal and state securities laws. The District Court entered judgment for petitioners, concluding that the advertisement had been false and misleading and that the accounts constituted "investment contracts" within the meaning of the federal securities laws. See 15 U. S. C. § 77b. The Court of Appeals reversed. 686 F. 2d 815 (1982). It held that because respondents' prosperity did not hinge on the success or failure of petitioners' investments— respondents earned $20,000 in commissions while petitioners were losing $27,000—the required "common enterprise" was lacking.

Section 2(1) of the Securities Act of 1933 defines "security" to include an "investment contract." 48 Stat. 74, as amended, 15 U. S. C. § 77b(1). Almost 40 years ago this Court held that an "investment contract" is a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ." SEC v. Howey Co., 328 U. S. 293, 298–299 (1946). The lower courts have disagreed over whether a trading account like that involved here satisfies the requirement of a "common enterprise." Some require a pooling of investments— horizontal commonality. See Curran v. Merrill Lynch, Pierce,

*Fenner & Smith, Inc.*, 622 F. 2d 216 (CA6 1980), aff'd on other grounds, 456 U. S. 353 (1982); *Hirk* v. *Agri-Research Council, Inc.*, 561 F. 2d 96 (CA7 1977); *Wasnowic* v. *Chicago Board of Trade*, 352 F. Supp. 1066 (MD Pa. 1972), aff'd, 491 F. 2d 752 (CA3 1973), cert. denied, 416 U. S. 994 (1974). Under this approach, discretionary futures contracts do not qualify as securities. Other courts require only the existence of a relationship between an investor and a broker—vertical commonality—and reach the opposite result. *SEC* v. *Continental Commodities Corp.*, 497 F. 2d 516 (CA5 1974); cf. *Commercial Iron & Metal Co.* v. *Bache & Co.*, 478 F. 2d 39 (CA10 1973); *Booth* v. *Peavey Co. Commodities Services*, 430 F. 2d 132 (CA8 1970). The SEC in the past seems to have taken the position that discretionary commodities futures contracts are securities. *In re Carlson*, 46 S. E. C. 1125 (1977) (horizontal pooling promised but not implemented); see also *SEC* v. *Continental Commodities Corp.*, *supra*, at 520.

Like the Fifth Circuit, the Ninth Circuit has rejected the horizontal commonality requirement. *E. g.*, *Meyer* v. *Thomson & McKinnon Auchincloss Kohlmeyer, Inc.*, 686 F. 2d 818 (1982), cert. denied, 460 U. S. 1023 (1983); *Brodt* v. *Bache & Co.*, 595 F. 2d 459, 461 (1978). However, its conception of vertical commonality is more stringent. The Fifth Circuit has stated that the "critical inquiry" is whether there is "promoter dominance," that is, "whether the fortuity of the investments collectively is essentially dependent upon promoter expertise." *SEC* v. *Continental Commodities Corp.*, *supra*, at 522, and n. 12; see also *Taylor* v. *Bear Stearns & Co.*, 572 F. Supp. 667, 671 (ND Ga. 1983). Under the Ninth Circuit's rule it is not enough that the promoter has control of the investments. "Vertical commonality" also requires a correlation between the success of the promoter and that of the accounts themselves. See 686 F. 2d, at 817; *Brodt* v. *Bache & Co.*, *supra*, at 462.

The importance of this conflict is not limited to the classification of discretionary commodities futures contracts. In related areas the lower courts are similarly divided as to whether *Howey* requires vertical or horizontal commonality. For example, the Ninth Circuit relied on its decision in this case in concluding that vertical commonality rendered a sale/leaseback transaction a security. *United States* v. *Jones*, 712 F. 2d 1316, cert. denied *sub nom. Webber* v. *United States*, 464 U. S. 986 (1983). In con-

trast, the Sixth Circuit has relied on *Curran, supra*, in applying a horizontal commonality test to a loan participation agreement. *Union Planters National Bank of Memphis* v. *Commercial Credit Business Loans, Inc.*, 651 F. 2d 1174, cert. denied, 454 U. S. 1124 (1981).

In light of the clear and significant split in the Circuits, I would grant certiorari.