**Richard R. WALS and Sandra L. Wals, Plaintiffs,**

v.

**FOX HILL DEVELOPMENT CORP. and Greyhound Real Estate Finance Company, Defendants.**

**No. 92–C–1152.**

United States District Court, E.D. Wisconsin.

Aug. 4, 1993.

Craig A. Caliendo, Hiller & Frank, Milwaukee, WI, for plaintiffs.

Wayne J. Staton, Staton Law Office, Madison, WI, for defendants.

### OPINION AND ORDER

CURRAN, District Judge.

On June 22, 1990, Richard and Sandra Wals purchased a time-share estate known as

Week 5, in Units B(E) and B(F), in Building 3 of the Fox Hills Golf Villas Condominium from Fox Hills Development Corp. In addition to the time-share contract, the Wals executed a consumer land contract and "agreement" converting the Wals' right to use the Units in Week 5 to a flexible time program in which the Wals would reserve their week in advance. Finally, the Wals submitted the time-share to Fox Hills in order to participate in an arrangement known as the "4–Share Rental Program." By participating in the 4–Share Rental Program, the Wals were guaranteed $1400 of rental income for 1990, which was placed in escrow to offset the monthly payments due under the land contract. The Wals claim that in guaranteeing the $1400 rental income for 1990 the Defendants impliedly represented that they would be receiving similar rental income in the subsequent years.

The Wals allege that they are unsophisticated and inexperienced in the ownership and operation of income producing properties. Richard Wals is a programmer/analyst. His wife is an elementary school teacher, and they reside in Menomonee Falls, Wisconsin, approximately 90 miles from the time-share unit. They claim that they purchased the time-share as an investment and, had it not been for the guaranteed rental income for 1990 and the prospect of similar receipts in subsequent years, they would not have purchased the time-share.

The Plaintiffs commenced the present action on October 28, 1992, premising jurisdiction on 15 U.S.C. § 77l and claiming that the offering and sale of the time-share unit, coupled with the flexible time agreement and the rental pool agreement, was an offering and sale of an "investment contract" within the meaning of the Securities Act of 1933, Section 2(1), 15 U.S.C. § 77b(1). The Plaintiffs also asserted state law claims seeking cancellation and recision of the offer to purchase and land contract and for return of all pay-

ments made under the land contract. Diversity of the parties does not exist.[1]

At the scheduling conference, the court questioned its jurisdiction to hear this matter and the Plaintiffs filed a motion for partial summary judgment seeking a determination that the various contracts considered together constituted an investment contract. The Defendant responded with its own motion for summary judgment and the matter is now ripe for decision. The facts relevant to a determination of whether the transactions at issue constitute a security are not in dispute, allowing the court to decide the issue as a matter of law.

In the seminal case of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court defined "investment contract" for purposes of the Securities Act as involving (1) an investment of money; (2) in a common enterprise; with (3) an expectation of profits to be derived solely from the efforts of others. *Id.* at 298–99, 66 S.Ct. at 1102–03. Both parties rely on *Hocking v. Dubois*, 885 F.2d 1449 (9th Cir.1989), *cert. denied*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990) to support their respective positions. The court agrees that *Hocking* is perhaps the case closest on point factually to the case at bar. *Hocking* involved the purchase of a condominium unit in Hawaii, along with the purchaser's participation in a rental pool arrangement. The purchaser relied on the expected rental income to cover his monthly payments and provide additional income. In discussing the second prong of the *Howey* test, common enterprise, the Ninth Circuit recognized that it "accepts either traditional horizontal commonality or, when no pooling among investors is present, a strict version of vertical commonality." *Id.* 885 F.2d at 1459. In *Hocking*, the condominium owners pooled their assets, giving up any claim to profits or losses attributable to their particular investments in return for a pro rata share of the profits of the enterprise, thus making "their

---

1. The Plaintiffs further alleged "upon information and belief" that the interests of Fox Hill Development Corp. in the land contract have been assigned to Greyhound Real Estate Finance Company. It is alleged in the answer that Greyhound has no interest in the land contract and

although Greyhound was served, it has not filed an answer and it appears that the Plaintiffs have abandoned any claim they might have against Greyhound. The court will accordingly refer to Fox Hills Development Corp. as the Defendant.

collective fortunes dependent on the success of a single common enterprise." Because the Plaintiff had raised facts supporting horizontal commonality, the Ninth Circuit did not consider whether vertical commonality existed. The Wals, however, urge the court to recognize vertical commonality as satisfying the "common enterprise" prong of the *Howey* test "where the profits and losses of the investor and investment promoter are interdependent." Brief in support of summary judgment motion at page 7, *citing Savino v. E.F. Hutton & Company*, 507 F.Supp. 1225 (S.D. New York 1981).

While the Plaintiffs may be correct that vertical commonality exists between the Wals and Fox Hills Development Corp., it appears that horizontal commonality is lacking. At the deposition of Russell Hampson, the General Manager of Fox Hills Development Corp., the following exchange occurred:

Q So every year, when they wanted to opt into the 4–Share rental program, they could choose one of those four months, depending upon availability.

A Yes. First come first served. Everyone receives—we send out a lease back form each year for those folks that want to put part or all or none or whatever into it. And then they ask them what month would you like to come in to. And, again, depending on the conventions, and whatever else, I mean it's a coin toss in your own mind which one is going to be the best. I'm frank to admit I don't know until the bookings are actually in. September might be the best one year, July might be best next year, and whatever, depending on occupancy.

Q And if you're lucky enough to have your specific unit you're assigned in a specific month that you pick to be completely rented out, then you get all of the—you get all the income that was generated for that unit for that week.

A Right. Correct. In other words, it's somewhat of a crap shoot, because they don't come out the same. You know.

Q So the units are not pooled in a month or in a season, and then they take all the gross income and split it up equally between—

A We did at one time, and we have changed that. They were never part of that. . . .

Hampson deposition at page 12–13.

Although the Ninth Circuit accepts either horizontal or vertical commonality, the Seventh Circuit has strictly adhered to a horizontal test of common enterprise under which multiple investors must pool their investments and receive pro rata profits. *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir.1984). *See also Hirk v. Agri–Research Council, Inc.*, 561 F.2d 96 (7th Cir.1977) and *Milnarik v. M–S Commodities Inc.*, 457 F.2d 274 (7th Cir.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972). The Third and Sixth Circuits also require pure horizontal commonality before an investment contract is found to exist. *See Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459, 460 (3d Cir.1982) and *Hart v. Pulte Homes of Michigan Corp.*, 735 F.2d 1001, 1004 (6th Cir.1984).

■ Because the Plaintiffs have only alleged vertical commonality and because it is clear from the record that horizontal commonality does not exist, the court must find that the "common enterprise" prong of the *Howey* test is missing. In view of the fact that the various transactions between the parties do not constitute an investment contract the court will deny the Plaintiffs' motion for partial summary judgment.

■ Because, however, the Defendant failed to comply with Local Rule 6 in responding to the dispositive motion and in filing its own, the court will not grant costs to the Defendant. This is further buttressed by the Defendant failing to provide the court with any authority on the dispositive issue. Accordingly,

IT IS ORDERED that the Plaintiffs' motion for partial summary judgment be and hereby IS DENIED.

IT IS FURTHER ORDERED that the Defendant's motion for summary judgment be and hereby IS GRANTED.

IT IS FURTHER ORDERED that, because the court will dismiss the claim over

which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c). IT IS ORDERED that the clerk enter final judgment in favor of the Defendants and against the Plaintiffs dismissing claim one with prejudice and dismissing claims two, three and four without prejudice. Each party is to bear its own costs.

Done and Ordered.