**Richard R. WALS and Sandra L. Wals, Plaintiffs–Appellants,**

v.

**FOX HILLS DEVELOPMENT CORPORATION and Grey Hound Real Estate Finance Company, Defendants–Appellees.**

No. 93–3118.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1994.

Decided May 23, 1994.

Craig A. Caliendo (argued), Hiller & Frank, Milwaukee, WI, for plaintiffs-appellants.

Wayne J. Staton (argued), Madison, WI, for defendants-appellees.

Before POSNER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

POSNER, Chief Judge.

The district judge rebuffed the plaintiffs' effort to characterize a condominium time-sharing purchase and rental agreement as an investment contract subject to the Securities Act of 1933. 15 U.S.C. § 77b(1); 828 F.Supp. 623 (E.D.Wis.1993). We must decide whether he was right to do so. In 1990 the plaintiffs bought "week 5" of an apartment in the Fox Hills Golf Villas Condominium outside of Manitowoc, Wisconsin, from the developer (the principal defendant in this case) and at the same time entered into a "flexible time" agreement with the developer under which the plaintiffs could swap their week (which is in February) for a week in the summer. Under a supplement to the "flexible time" agreement called the "4–share" program, which the plaintiffs also signed and which like the "flexible time" agreement itself was renewable annually, the plaintiffs agreed not to occupy the unit during the week in the summer that they had obtained by the swap of their winter entitlement but instead to allow the developer to rent it. They would receive the rental, minus the developer's fee of 30 percent; the effect would be to reduce the cost to them of their investment in their own unit. They contend that this unusual feature of their relationship with the developer converted the sale of the condominium to them from a sale of real estate to a sale of an investment contract which the developer was required and failed to register under the Securities Act, thus entitling them to rescind the sale. 15 U.S.C. § 77l (1).

The Fox Hills Golf Villas Condominium is a recreational condominium project (Fox Hills Golf Course is, we were told at argument, the largest golf course in the midwest). Nothing is more common than for the developer of such a project to offer to rent out owned but temporarily unoccupied units as the agent of the owner. Because the resulting division of rental income makes the developer and the condominium owner coventurers in a profit-making activity, imparting to the condominium interest itself the character of an investment for profit as well as a home for occupancy, those circuits that believe that only "vertical commonality" is required to create an investment contract would deem the combination of sale and rental agreement in this case an investment contract. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir.1974); *Cameron v. Outdoor Resorts of America, Inc.,* 608 F.2d 187, 193 (5th Cir.1979), modified, 611 F.2d 105 (5th Cir.1980) (per curiam); *Miller v. Central Chinchilla Group, Inc.,* 494 F.2d 414, 418 (8th Cir.1974); *SEC v. Eurobond Exchange, Ltd.,* 13 F.3d 1334, 1339 (9th Cir. 1994); *McGill v. American Land & Exploration Co.,* 776 F.2d 923, 925 (10th Cir.1985).

Other circuits, including our own, require more—require "horizontal commonality," that is, a pooling of interests not only between the developer or promoter and each individual "investor" but also among the "investors" (the owners of the condominiums, in this case)—require, in short, a wheel and not just a hub and a spoke. *Stenger v. R.H. Love Galleries, Inc.,* 741 F.2d 144 (7th Cir. 1984); *Milnarik v. M–S Commodities, Inc.,* 457 F.2d 274 (7th Cir.1972); *Deckebach v. La Vida Charters, Inc.,* 867 F.2d 278, 282 (6th Cir.1989); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 682 F.2d 459 (3d Cir. 1982). The Second Circuit seems to be leaning toward a requirement of horizontal commonality, see *Revak v. SEC Realty Corp.,* 18 F.3d 81 (2d Cir.1994); and in *Long v. Schultz Cattle Co.,* 896 F.2d 85, 88 (5th Cir.1990) (per curiam), the Fifth Circuit indicated that it would be willing to reconsider its contrary position announced in *Koscot* and *Cameron* in a suitable case. The Supreme Court has ducked the issue so far, *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 853 n. 17, 95 S.Ct. 2051, 2061 n. 17, 44 L.Ed.2d 621 (1975); *Mordaunt v. Incomco,* 469 U.S. 1115, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985) (White, J., dissenting from denial of certiorari), and the SEC has hedged. "Guidelines as to the Applicability of the Federal Securities Laws to Offers and Sale of Condominiums or Units in a Real Estate Development," [1972–73 Transfer Binder] Fed.Sec.L.Rep. (CCH) & 79,163, at p. 82,540 (Securities Act Release No. 5347, Jan. 4, 1973); see *Bender v. Continental Towers Limited Partnership,* 632 F.Supp. 497, 501 (S.D.N.Y.1986).

*Revak* is the only appellate case that involves the sale of residential condominiums except for *Hocking v. Dubois,* 885 F.2d 1449 (9th Cir.1989) (en banc), where, however, horizontal commonality was present, making the choice between the two lines of case unimportant. *Id.* at 1453 n. 4. *Cameron,* which involved campsites, is quite close, however, and *Allison v. Ticor Title Ins. Co.,* 907 F.2d 645 (7th Cir.1990), involved an arrangement, which the jury found to be an investment contract, that is much like that in the present case—but whether the finding was correct was not an issue on appeal.

Our circuit's position comports better, we believe, with the purpose of the 1933 Act than that of the circuits which dispense with the requirement of establishing horizontal commonality. It is true that real estate is an "investment" in the fundamental sense of an outlay intended to yield benefits over a substantial period of time, conventionally at least a year. The benefits can be pecuniary or nonpecuniary but the combination of the "flexible time" agreement with the "4–share" program converts the condominium owner's investment, even if only temporarily, into a purely pecuniary investment, for the owner obtains no consumption value from his property when he is not occupying it. Even so, the optional character of the "flexible time" and "4–share" agreements makes it difficult to conceive of the sale of the condominium itself as the sale of a security, *Allison v. Ticor Title Ins. Co., supra,* 907 F.2d at 649, and it is the sale of the condominium that the Walses want to rescind. The statutory language ("the term 'security' means any note, stock, treasury stock, bond, debenture, ... investment contract, ... or, in general, any interest or instrument commonly known as a 'security,' " 15 U.S.C. § 77b(1)) suggests that the term "investment contract" has the limited purpose of identifying unconventional instruments that have the essential properties of a debt or equity security. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 690, 105 S.Ct. 2297, 2304, 85 L.Ed.2d 692 (1985); *Marine Bank v. Weaver,* 455 U.S. 551, 555–56, 102 S.Ct. 1220, 1223–24, 71 L.Ed.2d 409 (1982). A share of stock, for example, is an undivided interest in an enterprise, entitling the owner to a pro rata share in the enterprise's profits. *United Housing Foundation, Inc. v. Forman, supra,* 421 U.S. at 851, 95 S.Ct. at 2060. The owner of a condominium does not own an undivided share of the building complex in which his condominium is located. He owns his condominium, and if it is rented out for him by the developer he receives the particular rental on that unit rather than an undivided share of the total rentals of all the units that are rented out. The nature of his interest thus is different from that of a shareholder in a corporation that owns rental property. This is true

whether he owns the condominium all year round or owns a temporal slice of it like the Walses, although we cannot find any case on the point.

It makes no difference that the rental received by the plaintiffs was not the rental of their own property, which was week 5 of "their" condominium unit. In effect they swapped week 5 for a subsequent week, then rented the subsequent week and received the rental (if there was any, for of course the developer might be unsuccessful in his effort to rent it). Still, they did not receive an undivided share of some pool of rentals or profits. They received the rental on a single apartment, albeit one not owned by them (for it was not their week).

There was a pooling of weeks, in a sense, because the plaintiffs selected their summer swap week from a "pool" of available weeks. But there was not a pooling of profits, which is essential to horizontal commonality. E.g., *Milnarik v. M–S Commodities, Inc., supra,* 457 F.2d at 276–77; *Hirk v. Agri–Research Council, Inc.,* 561 F.2d 96, 100–01 (7th Cir. 1977); *Union Planters National Bank v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1183 (6th Cir.1981); *Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216, 222 (6th Cir.1980); *Revak v. SEC Realty Corp., supra,* 18 F.3d at 87–89. The requirement of horizontal commonality has been derided as being formalistic and unrelated to the purposes of the 1933 Act. James D. Gordon, III, "Common Enterprise and Multiple Investors," 3 *Colum.Bus.L.Rev.* 635, 660–62 (1988). We disagree. The Act is a disclosure statute. It requires promoters and issuers to make *uniform* disclosure to all investors, and this requirement makes sense only if the investors are obtaining the same thing, namely an undivided share in the same pool of assets and profits. That is not what the plaintiffs in this case received even after swapping. Their investment was in a specific time slice of a specific apartment the physical and temporal characteristics of which (including price) differed from those of other apartments. Their return was tied to another space-time slice with its own unique characteristics. Every week of every apartment was a different product. In fairness to Gordon, we note that he would not classify an arrangement lacking horizontal commonality as an investment contract unless the rental arrangements between the developer and each of the condominium owners were similar. But we think that such an approach would provide insufficient guidance to developers.

We can imagine a case—perhaps *Adams v. Cavanagh Communities Corp.,* 847 F.Supp. 1390 (N.D.Ill.1994), is the case, though we need not and do not so decide—in which undeveloped lots are marketed on a large scale to unsophisticated investors who neither inspect their lot before buying it nor ever build or occupy a home on it—it is for them purely a speculative investment—and while there is no pooling of profits the investors regard the lots as fungible. *Adams* was almost a case, at least as described in the district court's opinion—for we do not mean to be endorsing the description or otherwise prejudicing the decision of an appeal in that case should one be taken—in which the promoter was selling shares but calling them lots. The SEC in the release we cited earlier took the position that where the investment purpose is dominant (is everything, as we have described *Adams* ), the sale is indeed of an investment contract. We need not decide whether interests so otherwise similar to shares in a real estate development company should be deemed to fall outside the protections of the 1933 Act merely because profits are not pooled, a conclusion that might be thought to create a loophole. Our case falls well short of that. The Walses bought and then rented a home. The unusual form of the rental arrangement did not convert the sale of the home into an investment contract.

Affirmed.