### SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,

v.

### John D. LAUER and Clifton Capital Investors L.P., Defendants–Appellants.

No. 94–3210.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1995.

Decided April 12, 1995.

Rehearing Denied May 17, 1995.

Jacob H. Stillman, Katharine B. Gresham (argued), Lucinda O. McConathy, Brian F. McNally, Diane V. White, S.E.C., Office of Gen. Counsel, Washington, DC, for S.E.C.

Susan Getzendanner, Donna L. McDevitt (argued), Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for John D. Lauer and Clifton Capital Investors L.P.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

John D. Lauer and a company controlled by him known as Clifton Capital Investors L.P. (CCI) appeal from the grant of a preliminary injunction sought by the Securities and Exchange Commission in its suit against Lauer, CCI, and others for federal securities fraud. The appellants argue that there is no security and therefore no jurisdiction under the federal securities laws. The case is surprisingly novel, involving as it does a degree of fraud so complete and barefaced that it ordinarily would be dealt with under the mail or wire fraud statutes or other criminal statutes not specialized to the securities market—indeed a fraud so thoroughgoing, pure, and barefaced as to raise the question whether it can be considered to have involved "securities" at all.

Lauer was the director of the Chicago Housing Authority's employee benefits program. In this capacity he administered a defined-benefit pension plan for the Authority's employees and made all decisions concerning the investment of the assets of the plan. The other defendants (besides Lauer's company, CCI) are individuals and entities constituting the "Konex Roll Program," an out-and-out fraud. The program purported to invest in "Prime Bank Instruments," a nonexistent high-yield security. Konex, as we shall refer to these defendants, invited Lauer to invest CHA pension plan assets in the Roll Program, promising an annual return of 60 percent on the minimum investment, which was $10 million. Konex represented that four or five other investors, plus a substantial trust, had already invested in the Roll Program. In fact none had. Lauer bit, and invested $10 million of the pension plan assets in the program. His contract with Konex, however, identified CCI rather than CHA as the investor, and Lauer and Konex agreed that CCI would be the administrator of the entire program and receive a fee for each trade of Prime Bank Instruments that the program made. Lauer later invested further millions in the Roll Program, some or more likely all of which was directly or indirectly the CHA's money. And to increase CCI's fees he wrote letters to prospective investors in the Roll Program (fortunately none bit), full of glowing false reports about how the program was doing. It wasn't doing; it was a fiction, an illusion. Lauer, who has since been fired by the CHA and is under investigation by a federal grand jury, never disclosed to the CHA his personal stake (through CCI) in the Roll Program. The preliminary injunction is designed to freeze the defendants' assets with a view to eventual disbursement to the ultimate victim of the fraud—the Chicago Housing Authority.

The government calls Lauer's $10 million investment of CHA funds in the Konex Roll Program an "investment contract." This is a term of art in the securities laws. It means an interest that is not a conventional security like a bond or a share of common stock but that, having the essential properties of a conventional security—being an undivided, passive (that is, not managed by the investor) financial interest in a pool of assets—is treated as one for purposes of these laws. 15 U.S.C. § 77b(1); *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 690, 105 S.Ct. 2297, 2304, 85 L.Ed.2d 692 (1985); *Wals v. Fox Hills Development Corp.,* 24 F.3d 1016 (7th Cir.1994). This is a fair description of the Konex Roll Program *as it was represented to Lauer*—a potentially important qualification, as we shall see. Investors would invest $10 million (or more) with Konex, which would use the money to buy Prime Bank Instruments. So Konex would be the manager, and Lauer and the other investors would have a passive financial interest, just as if they had bought shares of stock in an investment bank. Konex never represented that it would manage each investment separately, as an investment advisor would do. On the contrary, it represented that the investments would be combined to purchase "Prime Bank Instruments" in denominations of $100 million and that each investor would receive a pro rata share of the income of the instrument to the purchase of which his investment had contributed.

Against the conclusion that the interest he acquired was an investment contract and therefore within the scope of the securities laws, Lauer argues that since there was only one investor—namely himself (technically, his company CCI)—there could not be a pooling of investors' assets and without such a pooling there is no investment contract. For we have emphasized, most recently in *Wals v. Fox Hills Development Corp., supra,* that for an interest to be classified as an investment contract there must be what is called "horizontal commonality," which means simply that each investor's interest is pooled with that of the other investors, so that each has an undivided share in a pool of assets rather than an individual asset. (In *Wals* each investor owned a particular apartment in a condominium development rather than an undivided share in the entire development, so the requirement of horizontal commonality was not satisfied.) But it is the character of the investment vehicle, not the presence of multiple investors, that determines whether there is an investment contract. Otherwise a defrauder who was content to defraud a single investor (here to the tune of some $14 million) would have immunity from the federal securities laws. That would not make any sense, and is not contemplated by any of the cases that require horizontal commonality.

This first argument of Lauer's blends insensibly into his second, that the securities laws do not apply to frauds so complete, so pure, that no pooling would ever take place. Prime Bank Instruments do not exist. So even if Konex had succeeded in raising money from additional investors, it would not have pooled their money to buy Prime Bank Instruments. It would either have pocketed all of the money, or, if what its masterminds had in mind was a Ponzi scheme, have pocketed most of the money and paid the rest to the investors to fool them into thinking they were making money and should therefore invest more (or tell their friends to invest). It would be a considerable paradox if the worse the securities fraud, the less applicable the securities laws. Lauer overlooks the fact that it is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security). *SEC v. United Benefit Life Ins. Co.,* 387 U.S. 202, 211, 87 S.Ct. 1557, 1562, 18 L.Ed.2d 673 (1967); *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 123–24, 88 L.Ed. 88 (1943). A central purpose of the securities laws is to protect investors and would-be investors in the securities markets against misrepresentations. *Randall v. Loftsgaarden,* 478 U.S. 647, 659, 106 S.Ct. 3143, 3150–51, 92 L.Ed.2d 525 (1986); *United States v. Naftalin,* 441 U.S. 768, 774–76, 99 S.Ct. 2077, 2082–83, 60 L.Ed.2d 624 (1979). An elementary form of such misrepresentation is misrepresenting an interest as a security when it is nothing of the kind. Konex told Lauer that the $10

million (later $14 million) that he was investing with Konex would be used along with investments by other investors to purchase Prime Bank Instruments. The effect was to represent Lauer's interest as being an investment contract. It was nothing of the kind. It was the perilous deposit of money with a fraud.

■■■ We must now consider whether Konex actually did represent to Lauer that his investment would be pooled with others. We do not have to answer the question definitively. The case is before us on an appeal from the grant of a preliminary injunction, and as is too familiar to require citation such a grant is proper even if the district judge is uncertain about the defendant's liability. All that is required is a degree of likelihood coupled with greater irreparable harm from the denial of the injunction than from the grant. This standard is easily satisfied here and it makes no difference that the disputed fact essential to liability—whether Konex made representations that it would pool the investors' contributions—was also a jurisdictional fact. Cf. *ACLU v. City of St. Charles*, 794 F.2d 265, 269 (7th Cir.1986). This is not to say that a court could enjoin a party "to whatever extent jurisdiction may exist," *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir.1985), any more than it could enjoin a party to whatever extent the plaintiff's rights may have been invaded. The court must assess the probability of the plaintiff's succeeding in the trial on the merits, and one ingredient of that success is, of course, establishing that the court has jurisdiction. Usually that is easily done but in the unusual case where it is not the court need no more be certain that it has jurisdiction than it need be certain that the plaintiff has a winning case on the merits. It need only have sufficient confidence about both jurisdiction and the merits to make the issuance of a preliminary injunction a reasonable measure for minimizing the possibility of error that is always present when a court is asked to act on the basis of an incomplete record.

The preliminary injunction that the district judge issued in this case was and is essential to prevent the dissipation of assets that belong to the Chicago Housing Authority, and while it is possible that the interest that Lauer acquired in the Konex Roll Program for his millions in other people's money was not an investment contract after all, it probably was and that is all that is required at this stage. There is nothing to indicate that Konex gave out that it meant to operate as an investment advisor, investing each investor's assets separately, and much to indicate that it represented itself as intending to conduct a grandiose mutual-fund type of investment business in which each investor would have the equivalent of shares.

It may seem curious that Lauer should be a defendant, when he was the victim—indeed the only victim—of the scam. But of course he was not the victim. The CHA was the victim. Lauer, though initially deceived (we may assume), was an active participant in Konex's fraud. His fraudulent letter designed to reel in more suckers, and his failure to disclose to the CHA his personal financial stake in the Roll Program, violated multiple provisions of federal securities law—as he does not deny, provided that his interest was properly classified as an investment contract, as we believe it was.

AFFIRMED.